# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| OFI RISK ARBITRAGES, OFI RISK ARB ABSOLU and TIMBER HILL LLC, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>  vs.<br><br>COOPER TIRE & RUBBER COMPANY, ROY ARMES and BRADLEY HUGHES,<br><br>      Defendants. | C.A. No. 1:14-CV-00068-LPS<br><br><u>CLASS ACTION</u> |

**MEMORANDUM IN SUPPORT OF THE MOTION OF ZHI SUN AND XIAOYAN JIA TO BE APPOINTED LEAD PLAINTIFFS AND TO APPROVE PROPOSED LEAD PLAINTIFFS' CHOICE OF COUNSEL**

**FARUQI & FARUQI, LLP**
James R. Banko (#4518)
20 Montchanin Road, Suite 145
Wilmington, DE 19807
Telephone: (302) 482-3182
Fax: (302) 482-3612
jbanko@faruqilaw.com

*Proposed Liaison Counsel*

**KAHN SWICK & FOTI, LLC**
Kim E. Miller
250 Park Avenue, Suite 2040
New York, NY 10177
Telephone: (212) 696-3730
Facsimile: (504) 455-1498
kim.miller@ksfcounsel.com

*Counsel for the Sun Family and Proposed Lead Counsel for the Class*

March 18, 2014

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………………..ii

PRELIMINARY STATEMENT……………………………………………………………………1

NATURE AND STATE OF THE PROCEEDINGS ………………………………………………1

SUMMARY OF THE ARGUMENT……………………………………………………………..1

STATEMENT OF FACTS………………………………………………………………………..2

ARGUMENT……………………………………………………………………………………..9

    I.    THE SUN FAMILY SHOULD BE APPOINTED
         AS LEAD PLAINTIFFS……………………………………………………………9

        A.    The Procedural Requirements of the PSLRA…………………………….9

        B.    The Sun Family is "The Most Adequate Plaintiff"………………………10

            1.    The Sun Family Has Complied With
                 the PLSRA and Should Be Appointed Lead Plaintiffs………….10

            2.    The Sun Family Has the Largest Financial Interest…………………11

            3.    The Sun Family Satisfies the Requirements of Rule 23……………..12

                i.    The Sun Family's Claims are Typical
                    of the Claims of All the Class Members…………………12

                ii.    The Sun Family Will Adequately Represent the Class….13

    II.    THE COURT SHOULD APPROVE THE SUN FAMILY'S
          CHOICE OF LEAD COUNSEL……………………………………………………14

CONCLUSION……………………………………………………………………………………15

# TABLE OF AUTHORITIES

**Cases**

*Baby Neal v. Casey*, 43 F.3d 48 (3d Cir. 1994) ............................................................................ 13

*City of Roseville Emples. Ret. Sys. v. Horizon Lines, Inc.*, C.A. No. 08-969, 2009 U.S. Dist. LEXIS 62572 (D. Del. June 18, 2009) ..................................................................................... 10

*Grasty v. Amalgamated Clothing & Textile Workers Union*, 828 F.2d 123 (3d Cir. 1987) ......... 13

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3rd Cir. 2001) ................................................. 10, 11, 12

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ........................................... 13

*Vandevelde v. China Natural Gas, Inc.*, 277 F.R.D. 126 (D. Del. 2011) .................... 10, 11, 12, 13

*Vicuron Pharms., Inc. Secs. Litig.*, 225 F.R.D. 508 (E.D. Pa. 2004) ............................................ 13

**Statutes**

15 U.S.C. § 78j ................................................................................................................................ 2

15 U.S.C. § 78u-4 ................................................................................................................... passim

15 U.S.C. §78t ................................................................................................................................. 2

17 C.F.R. § 240.10b-5 ..................................................................................................................... 2

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................ 3, 12, 13

## PRELIMINARY STATEMENT

Proposed lead plaintiffs Zhi Sun and Xiaoyan Jia, who are married, (the "Sun Family" or "Movants") hereby move this Court: (1) to be appointed Lead Plaintiffs in this action pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. §§ 78j and 78t), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. §§ 78u-4) and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5); and (2) to approve the Sun Family's choice of Lead Counsel.

## NATURE AND STATE OF THE PROCEEDINGS

The first lawsuit against Defendants, *OFI Risk Arbitrages et al. v. Cooper Tire & Rubber Company et al.*, C.A. No. 1:14-CV-00068-LPS, was filed in the District of Delaware on January 17, 2014. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), on January 17, 2014, the first notice that a class action had been initiated against Defendants was published on *Marketwired*, a widely-circulated national business-oriented wire service, advising members of the proposed Class of their right to move the Court to serve as Lead Plaintiff no later than March 18, 2014. *See* Miller Decl. at Exhibit C.

The Sun Family are Class Members (*see* Miller Decl. at Exhibit A) who have timely filed this motion within the 60 day period following publication of the January 17, 2014 Notice.

## SUMMARY OF THE ARGUMENT

The Court is to appoint as Lead Plaintiff the movant with the largest financial interest in the litigation that otherwise satisfies the requirements of Fed. R. Civ. P. 23. *See* 15 U.S.C. 78u-4(a)(3)(B)(iii). Here, the Sun Family fully understands their duties and responsibilities to the

1

Class, and is willing and able to oversee the vigorous prosecution of this action. As described in the Certification and Loss Chart attached to the Declaration of Kim E. Miller in Support of the Motion of the Sun Family To Be Appointed Lead Plaintiff and To Approve Proposed Lead Plaintiff's Choice of Counsel ("Miller Decl.") at Exhibit A and Exhibit B, the Sun Family has suffered losses as a result of their purchases of Cooper Tire securities from June 12, 2013 and November 8, 2013, inclusive (the "Class Period"). To the best of their knowledge, the Sun Family has sustained the largest loss of any investor seeking to be appointed Lead Plaintiff.

In addition to evidencing the largest financial interest in the outcome of this litigation, the Sun Family's Certifications demonstrate their intent to serve as Lead Plaintiff in this matter, including their cognizance of the duties of serving in that role. *See* Miller Decl. at Exhibit A. Moreover, the Sun Family satisfies both the applicable requirements of the PSLRA and Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and is presumptively the "most adequate plaintiff."

Accordingly, the Sun Family respectfully submits this memorandum of law in support of their motion, pursuant to 15 U.S.C. § 78u-4(a)(3)(B), as amended by the PSLRA, for an order: (1) appointing the Sun Family as Lead Plaintiff in this action pursuant to Section 21D(a)(3)(B) of the Exchange Act, and (2) approving their selection of the law firm of Kahn Swick & Foti, LLC ("KSF"), as Lead Counsel for the Class.

## STATEMENT OF FACTS[1]

Defendant Cooper Tire is a Delaware corporation with its principal place of business in Findley, Ohio. The Company is purportedly the fourth largest tire manufacturer in North America, and the eleventh largest tire manufacturer in the world by revenue. The Company's

---

[1] These facts are derived from the Complaint filed in *OFI Risk Arbitrages et al. v. Cooper Tire & Rubber Company et al.*, No. 1:14-CV-00068-UNA (filed January 17, 2014).

common stock trades on the New York Stock Exchange under ticker symbol "CTB." Cooper currently has almost 65 million shares of stock outstanding.

Throughout the Class Period, Defendants made a series of materially false and misleading statements in connection with the proposed merger between Cooper Tire and Apollo Tyres Ltd. ("Apollo") during the Class Period, violating federal securities laws. Specifically, on June 12, 2013, the start of the Class Period, Cooper Tire announced that it had entered into an agreement to be acquired by Apollo, an Indian-based tire company, for $35 per share, putting the total deal at $2.5 billion in cash. The merger would create the seventh largest tire manufacturer in the world by revenue, and Cooper Tire touted the deal to the Company's shareholders as an unbeatable offer.

Although Cooper Tire executives presented the deal to investors as a "compelling" transaction that was "in the best interests of shareholders," Defendants concealed known, material risks that made it highly unlikely, if not impossible, that the deal would close at $35 per share. Indeed, Cooper Tire executives knew that the joint venture partner in the Company's most important subsidiary—Cooper Chengshan Tire Company, Ltd. ("CCT")—vigorously opposed the transaction, had the ability to thwart the deal, and demanded extraordinary compensation in return for any agreement that it would not do so. The fact that Cooper Tire's joint venture partner, Chengshan Group ("Chengshan"), opposed the Apollo merger was obvious to Defendants, as Chenghsan itself had sought to acquire Cooper Tire prior to the announcement of the deal—a crucial fact that Cooper Tire concealed from investors and Apollo throughout the Class Period.

Despite knowing that Chengshan's opposition to the Apollo merger posed a massive risk to the transaction, Cooper Tire touted CCT and the Company's Chinese operations as the central

3

factor in favor of the deal, and featured them prominently in its announcement. Accordingly, Cooper Tire's announcement of the deal not only failed to identify Chengshan's opposition to the transaction as a major risk that was likely to prevent Apollo's acquisition of Cooper Tire, but falsely touted the Chengshan partnership as an asset that made the transaction more likely to close.

These representations were false, and misled investors concerning the true risks of the transaction. In truth, Defendants knew that the merger was fraught with risk, and that it was highly unlikely to be consummated on the terms disclosed in Defendants' proxy materials because, as Defendants knew, Chengshan vigorously opposed the transaction. Defendants also knew that CCT was one of primary factors motivating Apollo to agree to the deal, as Cooper Tire had specifically touted CCT as providing Apollo with a window to the Chinese market. But Defendants knew that Cooper Tire had no effective control over CCT, and that Chengshan, which has a massive presence in China where CCT operates, had the unilateral ability to direct operations at the CCT facility and could, at whim, shut down one of the most significant components of Cooper Tire's business. Indeed, Chengshan had previously denied Cooper Tire executives access to the CCT facility. Defendants also knew that Cooper Tire did not even have access to CCT financial information, except as permitted by Chengshan.

Cooper Tire failed to disclose these crucial facts to Apollo (and Cooper Tire investors) even though Apollo was intently focused on Chengshan's reaction to the transaction during the premerger due diligence process. Accordingly, in order to prevent a negative reaction, Apollo requested to meet personally with Chairman Che. At that May 15, 2013 meeting, which was attended by Apollo and Cooper Tire representatives, Chairman Che explained that he was opposed to any transaction with Apollo and, at the very least, demanded compensation in return

4

for any approval of the deal, saying "My father is changing to my stepfather – what am I getting?" Cooper Tire executives understood that this meant Chairman Che demanded compensation for his approval, and that the failure to provide for such compensation as part of the transaction would present tremendous risks to closing on the deal. Indeed, on June 11, 2013, the day before the merger was announced to Cooper Tire's shareholders, Defendant Armes met again with Chairman Che, who reiterated that "he would really not like to [sic] us sell the company and his interest was in keeping Cooper Tire and keep things going the way that we were."

Unlike Apollo, Cooper Tire's investors and the public at large knew nothing about Che's extortionate demand, but were kept in the dark by the Defendants. Even Apollo was denied the full story. While it was aware of Che's diffident reaction, it was denied information crucial to understanding the magnitude of the risk – the fact that Che had previously expressed an interest in buying Cooper Tire himself. Thus, Apollo (and the public) could not rationally evaluate the likelihood that Che would do his utmost to obstruct an acquisition by Apollo absent a massive payment.

After the Merger Agreement was signed, a number of challenges to the deal materialized. First, two grievance were filed by the United Steelworkers, Local Union 725L and 207L ("USW"), challenging the merger on the grounds that it violated Cooper Tire's Memoranda of Agreement for its plants in Texarkana, Arkansas and Findlay, Ohio. The grievances were filed on August 1, 2013, and arbitration was held in Washington D.C. at the end of the month. On September 13, 2013 the arbitrator issued its decision, ruling against Cooper Tire and finding that the "Company is ordered to refrain from selling or transferring the Texarkana and Findlay plants pursuant to the Agreement and Plan of Merger unless and until the Union has entered into

agreements with the buyer, Apollo Tyres B.V., prior to the closing recognizing the Union as the bargaining agent."

Second, following the announcement of the transaction, workers at the CCT facility went on strike demanding termination of the merger. CCT employees stopped producing Cooper Tire tires, and denied Cooper Tire all access to the facility and to any information concerning CCT. While CCT employees temporarily returned to work on June 28, 2013, the strike resumed on July 13, 2013, and CCT workers began barring Cooper Tire-affiliated managers from the CCT facility. For example, on July 17 and 18, employees at the CCT facility prevented Cooper Tire representatives from removing Cooper Tire's own tire molds from the facility. CCT employees have since refused to produce any Cooper Tire-branded tires, and have physically barred Cooper Tire-appointed managers from accessing the CCT facility, obtaining CCT's financial books and records, and have even prevented CCT from entering certain operating and financial data into CCT's computer systems that Cooper Tire can access remotely. Cooper Tire itself has admitted that it had no physical control over, or even access to, CCT's operations, facilities, assets, and accounting books and records, and did not have any such control or access for months.

Despite evidence to the contrary, Cooper Tire continued to downplay the impact the CCT strike had on the viability of the deal. For example, in its Proxy, Cooper Tire stated, "Neither the strike nor the plant slowdown are expected to have an effect on the consummation of the merger."

Apollo was stunned by the CCT shut-down, and immediately engaged Cooper Tire to determine its impact on the transaction. However, Cooper Tire knew that its inability to obtain basic information from CCT and generate financial results for its most important subsidiary was a fundamental roadblock preventing Cooper Tire from closing on the deal. Cooper Tire knew

6

that its lack of control over CCT contradicted its representations to Apollo and, under the terms of the Merger Agreement, enabled Apollo to simply walk away from the deal. Recognizing that it was unable to complete the transaction at the $35-per-share price that Cooper Tire touted to investors, Cooper Tire filed a lawsuit on October 4, 2013 preemptively seeking to force Apollo to close on the merger. On, October 7, 2013, before the market opened, Cooper Tire filed a Form 8-K with the SEC which included a press release revealing that the deal was unraveling, as well as a copy of the complaint Cooper Tire filed against Apollo on October 4.

In response to these disclosures, and the market's realization that the merger was in dire jeopardy and would not be consummated at the $35 per-share price that Cooper Tire announced on June 12, 2013 (and which shareholders, without complete and accurate information, had approved just days before), Cooper Tire's common shares plunged. Specifically, Cooper Tire stock fell from $31.27 per share on October 3, 2013 to close at $25.72 per share on October 7, 2013, wiping out over $300 million in shareholder value.

On October 14, 2013, Apollo filed its Answer to Cooper Tire's Complaint in the Delaware Chancery Court. Apollo counterclaimed, stating that under the Merger Agreement "Cooper promised to do a number of things that it had not done." Apollo further noted that Cooper Tire was not in compliance with the Merger Agreement, "in part because its representations and warranties are not true and because it has failed to perform its covenants . . . . [] Cooper does not have control over its most significant subsidiary, [CCT]. Indeed, following the announcement of the Merger Agreement, it has become clear and Cooper Tire has admitted that Cooper Tire has lost any physical control over, or even access to, CCT's operations, facilities, assets, and accounting books and records, assuming it ever possessed the access or control that it warranted it had in the Merger Agreement.

7

Additionally, Apollo noted that Cooper Tire, as a result of its arbitration with USW, had been enjoined from consummating transactions contemplated by the Merger Agreement until a labor agreement had been reached with USW.

Significant testimony and evidence from the November trial in the Delaware Chancery Court confirms that Cooper Tire executives knew all along that Chengshan posed a material risk to the transaction, which was never disclosed to investors. Specifically, Cooper Tire executives, including Defendant CEO Roy Armes, repeatedly testified that, prior to the beginning of the Class Period and the announcement of the merger, Cooper Tire was informed that Chengshan vehemently opposed the merger and required that it be compensated in any Apollo transaction. Indeed, according to that testimony, formal negotiations beginning in March 2013 revealed that the Chengshan objected to the deal, and that CCT had in fact demanded $400 million for its stake in the venture—or nearly one-sixth of the cost of the entire deal.

Moreover, evidence produced in that litigation confirms that numerous other statements in Cooper Tire's Proxy were materially false and misleading. For example, while Cooper Tire reported projected net sales of $4.2 billion for 2013 in its Proxy, Cooper Tire produced internal reports weeks earlier that showed 2013 revenues were projected to be $3.9 billion—a $300 million difference—and that sales had continued to drop in the weeks leading up to and through the August 30, 2013 proxy filing and September 30, 2013 vote. Indeed, even though Cooper Tire had shared its increasingly dire financial projections with Apollo—further distressing its potential suitor by reporting that 2013 projected profits had been nearly cut in half over the course of just two months—Cooper Tire's shareholders were kept in the dark.

On November 8, 2013, the Delaware Chancery Court denied Cooper Tire's request for an order requiring Apollo to close on the merger, holding that Apollo had not breached the

agreement. In so ruling, the Delaware Chancery Court made clear that, based on the information disclosed for the first time at trial, it was highly doubtful Cooper Tire could ever have been able to satisfy its obligations under the Merger Agreement because Cooper Tire was unable to produce its third-quarter financial results.

In response to disclosures revealing that Cooper Tire was not entitled to force Apollo to close, Cooper stock fell again, from $26.90 per share on November 7, 2013 to close at $23.82 per share on November 8, 2013, wiping out another $175 million in shareholder wealth.

During the Class Period, Defendants materially misled the investing public, thereby inflating the value of the stock. The material misstatements resulted in the Sun Family and other members of the Class purchasing Cooper Tire securities for inflated values, thus causing damages to the Class when the truth was revealed and the price of the stock plummeted in value.

**ARGUMENT**

I. **THE SUN FAMILY SHOULD BE APPOINTED AS LEAD PLAINTIFFS**

    **A. The Procedural Requirements of the PSLRA**

The PSLRA sets forth a detailed procedure for the selection of a Lead Plaintiff to oversee securities class actions brought pursuant to the Federal Rules of Civil Procedure. *See* 15 U.S.C. §§ 78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the class informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Here, notice was published notice on *Marketwired* on January 17, 2014. *See* Miller Decl. Exhibit C. This notice indicated that applications for appointment as Lead Plaintiff were to be made no later than March 18, 2014. Within 60 days after publication of the required notice, any member or members of the proposed

Class may apply to the Court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in this action. *See* 15 U.S.C. §§ 78u-4(a)(3)(A-B).

Next, according to the PSLRA, within 90 days after publication of the initial notice of pendency of the action, the Court shall appoint as Lead Plaintiff the movant that the Court determines to be the most capable of adequately representing the interests of Class Members. . *See* 15 U.S.C. § 78u-4(a)(3)(B). In determining who is the "most adequate plaintiff," the act provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that—
>
> (aa) has either filed the complaint or made a motion in response to a notice…
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure [pertaining to class actions].

15 U.S.C. § 78u-4(a)(3)(B)(iii). *See Vandevelde v. China Natural Gas, Inc.*, 277 F.R.D. 126, 131 (D. Del. 2011); *City of Roseville Emples. Ret. Sys. v. Horizon Lines, Inc.*, C.A. No. 08-969, 2009 U.S. Dist. LEXIS 62572, at *4 (D. Del. June 18, 2009); *In re Cendant Corp. Litig.*, 264 F.3d 201, 222 (3rd Cir. 2001).

### B. The Sun Family is "The Most Adequate Plaintiff"

#### 1. The Sun Family Has Complied With the PLSRA and Should Be Appointed Lead Plaintiffs

The time period in which class members may move to be appointed Lead Plaintiff herein under 15 U.S.C. §§ 78u-4(a)(3)(A-B), expires on March 18, 2014. Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice (timely

published on January 17, 2014), the Sun Family timely moves this Court for appointment as Lead Plaintiffs on behalf of all members of the class.

Moreover, the Sun Family has sustained a substantial loss from their investment in Cooper Tire securities and has shown their willingness to represent the class by signing a Certification detailing their transactions in Cooper Tire securities during the Class Period. *See* Miller Decl. Exhibit A. As demonstrated by their certification, the Sun Family is prepared to consult with counsel on a regular basis, prior to every major litigation event, and direct the course of litigation, with the benefit of counsel's advice. In addition, the Sun Family has selected and retained highly competent counsel with significant experience in class action and securities litigation to represent the Class. The firm biography of proposed Lead Counsel, Kahn Swick & Foti, LLC, is attached as Exhibit D to the Miller Declaration.

### 2. The Sun Family Has the Largest Financial Interest

"To identify the movant with the largest financial interest, 'a court should consider, among other things: (1) the number of shares that the [m]ovant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs.'" *Vandevelde*, 277 F.R.D. at 131-32 (quoting *Cendant*, 264 F.3d at 222). During the Class Period, as evidenced by the accompanying signed certification (Miller Decl., Exs. A and B), the Sun Family, to the best of their knowledge, has the largest financial interest in the relief sought. Therefore, the Sun Family satisfies all of the PSLRA's prerequisites for appointment as Lead Plaintiffs in this action and should be appointed Lead Plaintiffs pursuant to 15 U.S.C. § 78u-4(a)(3)(B).

### 3. The Sun Family Satisfies the Requirements of Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two—typicality and adequacy—directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *See Vandevelde*, 277 F.R.D. at 132 ("To meet the "otherwise satisfies" criterion, the movant must establish only a prima facie case of typicality and adequacy under traditional Rule 23 principles."); *see also Cendant*, 264 F.3d at 263. As detailed below, the Sun Family satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying their appointment as Lead Plaintiffs.

#### i. The Sun Family's Claims are Typical of the Claims of All the Class Members

Under Rule 23(a)(3), typicality exists where "the claims…of the representative parties" are "typical of the claims…of the class." The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiff's claims arise from the same event or course of conduct that gives rise to claims of other class members, and when the claims are based on the same legal

theory. *See Vandevelde*, 277 F.R.D. at 132 (citing *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531-32 (3d Cir. 2004)); *see also Cendant*, 264 F.3d at 264. Moreover, "[f]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Vandevelde*, 277 F.R.D. at 132 (quoting *Grasty v. Amalgamated Clothing & Textile Workers Union*, 828 F.2d 123, 130 (3d Cir. 1987)). "Indeed, even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994).

In this case, the typicality requirement is met because the Sun Family's claims are identical, non-competing and non-conflicting with the claims of the other Class Members. The Sun Family and all the other Class Members (1) purchased Cooper Tire securities during the Class Period, (2) purchased Cooper Tire securities in reliance upon the allegedly materially false and misleading statements issued by Defendants, and (3) suffered damages by purchasing artificially inflated securities and then suffered harm when the truth was revealed and the inflation was removed from the stock price. Thus, the Sun Family's claims are typical of those of other class members since their claims and the claims of other class members resulted from the same illegal practices.

> **ii. The Sun Family Will Adequately Represent the Class**

Under Rule 23(a)(4), the representative parties must also "fairly and adequately protect the interests of the class." "The adequacy determination is made in context with the movant's choice of lead counsel." *Vandevelde*, 277 F.R.D. at 132 (quoting *Vicuron Pharms., Inc. Secs. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004)). For adequacy, "courts should consider whether [the movant] 'has the ability and incentive to represent the claims of the class vigorously, [whether

the movant] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class.'" *Id*.

Here, the Sun Family members are adequate representatives of the class.  As evidenced by the significant injuries suffered by the Sun Family, who purchased Cooper Tire securities at prices that were artificially inflated by Defendants' materially false and misleading statements, the Sun Family is incentivized to vigorously represent the claims of the class, the interests of the Sun Family are clearly aligned with the members of the class, and there is no evidence of any antagonism between the Sun Family's interests and those of the other members of the class. Furthermore, the Sun Family has retained competent and experienced counsel to prosecute these claims.  The Sun Family's proposed Lead Counsel is highly qualified, experienced, and able to conduct this complex litigation in a professional manner.  Thus, the Sun Family *prima facie* satisfies the typicality and adequacy requirements of Rule 23 for the purposes of this motion.

## II.     THE COURT SHOULD APPROVE THE SUN FAMILY'S CHOICE OF LEAD COUNSEL

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the proposed Lead Plaintiff shall, subject to Court approval, select and retain counsel to represent the class they seek to represent.  The Sun Family has selected Kahn Swick & Foti, LLC as Lead Counsel, a firm that has substantial expertise and experience in the prosecution of shareholder and securities class actions in federal and state courts across the country.  *See* Miller Decl. Exhibit D.  Thus, the Court may be assured that in granting this motion, the class will continue to receive legal representation of the highest caliber.

**CONCLUSION**

For all of the foregoing reasons, the Sun Family respectfully requests that this Court: (1) appoint the Sun Family to serve as Lead Plaintiffs in this action; (2) approve the Sun Family's selection of KSF as Lead Counsel for the Class; and (3) grant such other and further relief as the Court may deem just and proper.

Dated: March 18, 2014                               Respectfully submitted,

**FARUQI & FARUQI, LLP**

  /s/ James R. Banko
James R. Banko (#4518)
20 Montchanin Road, Suite 145
Wilmington, DE 19807
Telephone: (302) 482-3182
Fax: (302) 482-3612
jbanko@faruqilaw.com

*Proposed Liaison Counsel*

Kim E. Miller
**KAHN SWICK & FOTI, LLC**
250 Park Avenue, Suite 2040
New York, NY 10177
Telephone:   (212) 696-3730
Facsimile:    (504) 455-1498
kim.miller@ksfcounsel.com

-and-

Lewis S. Kahn
**KAHN SWICK & FOTI, LLC**
206 Covington St.
Madisonville, LA 70447
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
lewis.kahn@ksfcounsel.com

*Counsel for the Sun Family and Proposed Lead Counsel for the Class*