# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| OFI RISK ARBITRAGES, OFI RISK ARB ABSOLU and TIMBER HILL LLC, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>  vs.<br><br>COOPER TIRE & RUBBER COMPANY, ROY ARMES and BRADLEY HUGHES,<br><br>      Defendants. | C.A. No. 1:14-CV-00068-RGA<br><br>CLASS ACTION |

## SUPPLEMENTAL MEMORANDUM IN RESPONSE TO
## COURT'S JUNE 20, 2014 ORDER

**FARUQI & FARUQI, LLP**
James R. Banko (#4518)
20 Montchanin Road, Suite 145
Wilmington, DE 19807
Telephone: (302) 482-3182
Fax: (302) 482-3612
jbanko@faruqilaw.com

*Proposed Liaison Counsel*

**KAHN SWICK & FOTI, LLC**
Kim E. Miller (admitted *pro hac vice*)
250 Park Avenue, Suite 2040
New York, NY 10177
Telephone: (212) 696-3730
Facsimile: (504) 455-1498
kim.miller@ksfcounsel.com

*Counsel for the Sun Family and Proposed
Lead Counsel for the Class*

June 25, 2014

Pursuant to this Court's June 20, 2014 Order, lead plaintiff movants Zhi Sun and Xiaoyan Jia (the "Sun Family") respectfully submit this supplemental memorandum in further support of their motion for appointment as lead plaintiffs and to approve their choice of counsel, Kahn Swick & Foti, LLC ("KSF").

## **INTRODUCTION**

On June 20, 2014, the Court issued an Oral Order directing the lead plaintiff applicants to submit additional information "detailing fee arrangements, retainer agreements, and the process of negotiations to reach said fees and retainers with proposed lead counsel." Dkt. No. 39. Attached to the Declaration of J. Ryan Lopatka In Further Support of the Motion of Zhi Sun and Xiaoyan Jia To Be Appointed Lead Plaintiffs and To Approve Proposed Lead Plaintiffs' Choice of Counsel ("Lopatka Decl.") submitted herewith, the Sun Family Retainer Agreements[1] outline the fee agreement reached between the Sun Family and KSF at the onset of their attorney-client relationship. *See* Lopatka Decl., Exhibit A.

As explained in the retainer agreements, the Court has discretion in awarding attorney fees in a securities class action. Lopatka Decl., Exhibit A. Because the amount of attorneys' fees awarded can vary substantially depending on a number of factors, such as "the complexity and duration of the litigation" and "the amount of time devoted to the case by plaintiffs' counsel" (*In re Cendant Corp. Litig.*, 264 F.3d 201, 283 (3d Cir. 2001) (quoting *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000)), the Sun Family obtained an agreement that does not fix a specific percentage of a recovery for attorneys' fees, but states that in no event would KSF seek an award of attorneys' fees exceeding 33 1/3% of the recovery for the Sun Family and the class. Lopatka Decl., Exhibit A. Further, the agreement provides that the Sun

---

[1] The attached Retention Agreements are redacted to avoid the public availability of personal information; however, counsel for the Sun Family will readily supply a copy without redactions for review *in camera* should the Court choose to review the unredacted versions.

1

Family will negotiate and must approve of any fee request made by KSF. *Id*. This flexible approach fosters further client negotiation and approval of attorneys' fees as the litigation progresses, so that the fee, subject to the Court's approval, legitimately reflects the work performed by counsel in the case.

Vigilant to monitor counsel through the duration of the litigation, the Sun Family is also driven to obtain the best result for the class. Not only does the Sun Family have the largest financial interest of the competing applicants, but the Sun Family is also particularly well-suited to assist counsel in this litigation, which involves allegations concerning Cooper Tire's business practices in China. The Sun Family has lived in China, has familiarity with the culture and language, and has business and finance experience, which puts them in a unique position to contribute to counsel's efforts and drive the litigation for the Class. *See* Joint Declaration of Zhi Sun and Xiaoyan Jia in Further Support of Their Motion to Be Appointed Lead Plaintiffs and to Approve Proposed Lead Plaintiffs' Choice of Counsel ("Sun Family Decl.") at ¶2 [Dkt. No. 20-1].

The Court should also approve the Sun Family's choice of counsel, KSF. The law of the Third Circuit defers to the counsel selection of the lead plaintiff, and limits its inquiry "to whether the lead plaintiff's selection and agreement with counsel are reasonable on their own terms." *In re Cendant*, 264 F.3d at 276. For the reasons discussed below, KSF, counsel selected by presumptive lead plaintiff the Sun Family, should be approved.

## I. The Sun Family's Retainer and Fee Agreement Support Their Application for Lead Plaintiff

On January 23, 2014, the Sun Family contacted KSF to discuss the litigation against Cooper Tire, and their rights as Class Period purchasers of Cooper Tire stock. *See* Sun Family Decl. at ¶8 [Dkt. No. 20-1]. The Sun Family conferred with KSF regarding the firm's

2

qualifications and experience with securities litigation, and negotiated a contingent fee arrangement in the case, whereby KSF agreed to not seek an award of attorneys' fees greater than 33 1/3% of the recovery in the litigation. The Sun Family was informed that a judge must approve any class action settlement, and that the attorney fee the judge ultimately approves would depend on variety of different factors such as the time spent on the case by plaintiffs' counsel and the complexity of the litigation. After nearly two months of due diligence, the Sun Family again approached KSF to select the firm as its counsel. *See* Sun Family Decl. at ¶8 [Dkt. No. 20-1]. Zhi Sun and Xiaoyan Jia each signed a retention agreement, which explained the fee structure as follows:

> **Contingency fee:** We agree to represent you and other class members in this litigation on a fully contingent basis. This means that if, and only if, the lawsuit generates a fund and/or some benefit for the class, Will we seek payment of our fees. The payment of our fees and the reimbursement of our expenses in this case are subject to court approval. Absent an order from the court to the contrary, fees may be based on the nature of the benefit achieved. If there is no benefit conferred upon the class, this firm will ordinarily recover no fees. You will not have to pay any fees or advanced expenses yourself.

Lopatka Decl., Exhibit A. The contingency fee language from the retainer agreement did not include the previously discussed attorney fee cap of 33 1/3%; therefore, in an abundance of caution, Zhi Sun and Xiaoyan Jia each signed a notation on their retention agreement, which contains the following language:

> The Contingency Fee Shall be no greater than thirty-three and one third percent (33 1/3%) of the recovery. Client will negotiate and approve any fee request made by KSF, at such time as successful resolution of the case is obtained.

Lopatka Decl., Exhibit A.

As KSF discussed with the Sun Family, attorneys' fees are capped at 33 1/3%, but the retainer does not lock the fees at a specific percentage to reflect the idea that the fees are subject to further negotiations, as the course of litigation can affect the amount of fees justifiably earned

in a case. *See* Lopatka Decl., Exhibits A and B. For example, if a case quickly settles for a relatively large sum of money, the amount awarded for attorneys' fees should be less than a case that resolved slowly after an abundance of attorney time, effort and cost expenditures. Indeed, two of the factors considered by courts when approving an attorney fee award are "the complexity and duration of the litigation" and "the amount of time devoted to the case by plaintiffs' counsel." *In re Cendant Corp. Litig.*, 264 F.3d 201, 283 (3d Cir. 2001) (quoting *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000)). As such, an inflexible fee structure set in a retainer would serve little purpose. *See In re Cavanaugh*, 306 F.3d 726, 733 (9th Cir. 2002) ("[N]egotiations with counsel before lead plaintiff has even been appointed have an inherently hypothetical and contingent quality, making them a relatively poor indicator of plaintiff's adequacy to serve as lead.").

Furthermore, the retainer agreement states that the Sun Family must "negotiate and approve any fee request made by KSF." Lopatka Decl., Exhibit A. This arrangement requires the Sun Family to monitor KSF's work throughout the litigation and take an active role to ensure that the attorneys' fees sought by KSF reflect the work performed by counsel in the case.

## II. Presumptive Lead Plaintiff The Sun Family Is An Ideal Class Representative

The Sun Family, the presumptive lead plaintiff, is ideally suited to serve as class representative and lead this litigation. The PSLRA is explicit in its instruction that the movant with the largest losses who also satisfies the typicality and adequacy requirements of Fed. R. Civ. P. 23 is the presumptive Lead Plaintiff, and only with ***proof*** that the presumptive Lead Plaintiff will not fairly and adequately protect the interests of the class, or is subject to "unique defense" that render such plaintiff incapable of adequately representing the class, will this presumption be

rebutted.[2] The Sun Family have met all of the requirements of the PSLRA and all attacks on them by OFI Asset Management ("OFI") and Timber Hill LLC ("Timber Hill") (collectively, "OFI/TH Group") are unfounded speculation and conclusory assumptions.

The Sun Family purchased over 19,000 shares of Cooper common stock during the Class Period and lost over $93,000. In fact, the Sun Family are much more incentivized to actively pursue this litigation because their losses represent a much larger portion of their net worth than the losses of OFI (which don't even belong to OFI) or Timber Hill which manages market positions worth over $1,200,000,000, so their estimated $22,000 loss represents less than two ten-thousandths of their assets.

Notwithstanding their significant losses on Cooper stock during the Class Period, the Sun Family is particularly well-suited to serve as Lead Plaintiff in this action that involves allegations concerning Cooper Tire's Chinese business practices. Because of the Sun Family's familiarity with the customs and culture of China, and also because of their business and finance experience, the Sun Family has the ability to not only fully supervise KSF but also assist counsel in the litigation. *See* Sun Family Decl. at ¶2 [Dkt. No. 20-1].

### III. The Court Should Approve The Sun Family's Choice of Counsel

The Sun Family, as presumptive lead plaintiff, should have their choice of counsel, KSF, approved. The Third Circuit has held that "the Reform Act evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. N.J. 2001). As a result, "the court's inquiry is appropriately limited to whether the lead plaintiff's selection and

---

[2] 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa)-(bb) and 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb). *See also Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324-325 (S.D.N.Y. 2004) (Conclusory assertions of inadequacy of a lead plaintiff are insufficient to rebut the statutory presumption under the PSLRA without specific support in evidence of the existence of an actual or potential conflict of interest or a defense to which the lead plaintiff would be uniquely subject).

agreement with counsel are reasonable on their own terms." *Id*. In determining whether the selection is reasonable, courts consider the following factors: "1) the quantum of legal experience and sophistication possessed by the lead plaintiff; (2) the manner in which the lead plaintiff chose what law firms to consider; (3) the process by which the lead plaintiff selected its final choice; (4) the qualifications and experience of counsel selected by the lead plaintiff; and (5) the evidence that the retainer agreement negotiated by the lead plaintiff was (or was not) the product of serious negotiations between the lead plaintiff and the prospective lead counsel." *Id*. Because the question is one of reasonableness, "the ultimate inquiry is always whether the lead plaintiff's choices were the result of a good faith selection and negotiation process." *Id*.

Here, the Sun Family's choice of KSF satisfies each of these factors. First, the Sun Family has extensive experience in both investing and business administration. Zhi Sun and Xiaoyan Jia have degrees from Shandong University (Zhi Sun – business management; Xiaoyan Jia – finance and economics); they have been owners/founders of a transportation service company since 1983; and both have over twenty years of experience investing in the stock market. Sun Family Decl. at ¶2 [Dkt. No. 20-1]. The Sun Family's due diligence in selecting KSF, explained above, addresses the second and third factors, which both relate to the process by which the prospective lead plaintiff chose its representation. *See supra* Part I. The Sun Family selected KSF from a number of different firms that litigate securities fraud cases based on their experience in securities and other class action litigation, in addition to the firm's significant wealth of resources. Sun Family Decl. at ¶8 [Dkt. No. 20-1].

Indeed, the qualifications and experience of KSF establish the firm's prominence in the field. Since its inception in 2000, KSF has recovered tens of millions of dollars for its clients. KSF has previously served as lead or co-lead Counsel on numerous complex class actions in

6

federal and state courts across the country including *In re Virgin Mobile USA IPO Litigation*, 2:07-cv-05619-SDW-MCA ($19.5 million settlement), *In re BigBand Networks, Inc Securities Litigation*, 3:07-CV-05101-SBA ($11 million settlement), and *In re U.S. Auto Parts Networks, Inc. Securities Litigation*, 2:07-cv-02030-GW-JC ($10 million settlement). KSF also serves as Special Counsel in *Erica P. John Fund, Inc. v. Halliburton, et al.*, 3:02-CV-1152 (N.D. Tex), a case in which the U.S. Supreme Court has issued two landmark opinions concerning class certification of securities class actions. *See Erica P. John Fund, Inc. v. Halliburton Co., et al.*, 131 S.Ct. 2179 (2011); *Halliburton Co. v. Erica P. John Fund, Inc.*, 2014 U.S. LEXIS 4305, 6-7 (U.S. June 23, 2014). Further, KSF is or has served as lead or co-lead counsel in several derivative cases with national significance including *In re Bank of America Corporation Derivative Litigation*, Master File No. 09-MDL-2058 (DC) (S.D.N.Y. 2009)($62.5 million settlement), *In re Barnes & Noble Stockholder Derivative Litigation*, C.A. No. 4813-VCS (Del. Ch. 2009)($29 million settlement), *In re Moody's Corporation Shareholder Derivative Litigation*, Case No. 1:09-cv-06063 (GBD) (S.D.N.Y.), and *In re ArthroCare Corporation Derivative Litigation*, Case No. D-1-GN-003484 (W.D. Tex. 2008) ($8 million settlement).

The fifth and final factor—the evidence that the retainer agreement was the product of negotiations between the lead plaintiff and the prospective lead counsel—also reinforces the Sun Family's selection of KSF. As explained above, the retainer agreement negotiated between KSF and the Sun Family caps attorneys' fees at 33 1/3% of the total recovery for the Sun Family and the class, but does not lock the fees at a specific percentage to reflect the idea that the fees are subject to further negotiations and to court approval, which may place the fees well below the cap based upon—among other factors—the complexity of the case and the time and effort expended by counsel. *See* Lopatka Decl., Exhibit A. The Sun Family must also negotiate and

approve any fee request made by KSF at such time that a successful resolution of the case is obtained.  This fee structure provides flexibility in the event of a quick settlement for a relatively large sum of money early in the litigation, and also ensures that the Sun Family actively and continuously monitor counsel's efforts in litigating the case, and negotiate and approve any fee request made by KSF.

## CONCLUSION

For all of the foregoing reasons, the Sun Family respectfully requests that this Court: (i) appoint the Sun Family to serve as Lead Plaintiff in this Action; (ii) approve the Sun Family's selection of KSF as Lead Counsel for the Class; and (iii) grant such other and further relief as the Court may deem just and proper.

Dated: June 25, 2014                                              Respectfully submitted,

**FARUQI & FARUQI, LLP**
 /s/ James R. Banko
James R. Banko (#4518)
20 Montchanin Road, Suite 145
Wilmington, DE 19807
Telephone: (302) 482-3182
Fax: (302) 482-3612
jbanko@faruqilaw.com

*Proposed Liaison Counsel*

Kim E. Miller (admitted *pro hac vice*)
**KAHN SWICK & FOTI, LLC**
250 Park Avenue, Suite 2040
New York, NY 10177
Telephone:  (212) 696-3730
Facsimile:   (504) 455-1498

-and-

8

Lewis S. Kahn
**KAHN SWICK & FOTI, LLC**
206 Covington St.
Madisonville, LA 70447
Telephone (504) 455-1400
Facsimile: (504) 455-1498

*Counsel for the Sun Family and Proposed Lead Counsel for the Class*