IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

OFI RISK ARBITRAGES, OFI RISK ARB
ABSOLU and TIMBER HILL LLC,
individually and on behalf of all others
similarly situated,

Plaintiffs,

v.

Civil Action No. 14-00068-RGA

COOPER TIRE & RUBBER COMPANY,
ROY ARMES and BRADLEY HUGHES,

Defendants.

MEMORANDUM OPINION

David J. Margules, Esq., Bouchard Margules & Friedlander, P.A., Wilmington, DE; Albert J.
Carroll, Esq., Bouchard Margules & Friedlander, P.A., Wilmington, DE, Liaison Counsel for
Movants OFI Risk Arbitrages, OFI Risk Arb Absolu and Timber Hill LLC.

Vincent R. Cappucci, Esq., Entwistle & Cappucci LLP, New York, NY; Andrew J. Entwistle, Esq.,
Entwistle & Cappucci LLP, New York, NY; Alexander Broche, Esq., Entwistle & Cappucci LLP,
New York, NY; Gerald H. Silk, Esq., Bernstein Litowitz Berger & Grossman LLP, New York, NY;
Avi Josefson, Esq., Bernstein Litowitz Berger & Grossman LLP, New York, NY; Michael
Blatchley, Esq., Bernstein Litowitz Berger & Grossman LLP, New York, NY, Counsel for
Movants OFI Risk Arbitrages, OFI Risk Arb Absolu and Timber Hill LLC.

James R. Banko, Esq., Faruqi & Faruqi, LLP, Wilmington, DE, Liaison Counsel for Movants Zhi
Sun and Xiaoyan Jia.

Kim E. Miller, Esq., Kahn Swick & Foti, LLC, New York, NY, Counsel for Movants Zhi Sun and
Xiaoyan Jia.

August _____, 2014

ANDREWS, U.S. District Judge:

Presently before the Court are two competing motions from two groups of movants seeking appointment as Lead Plaintiffs for the proposed securities class action and the approval of their choice of Lead Counsel.

On January 17, 2014, plaintiffs OFI Risk Arbitrages and OFI Risk Arb Absolu, through their asset manager OFI Asset Management (collectively "OFI"), and Timber Hill LLC (collectively "OFI & Timber Hill") filed this securities class action against Cooper Tire and Rubber Company, Roy Armes, and Bradley Hughes (collectively "Defendants"). (D.I. 1). That same day, OFI & Timber Hill also caused a notice of the pendency of this action to be published in compliance with the Private Securities Litigation Reform Act (the "PSLRA"). (D.I. 12 at 8; D.I. 13, Ex. C at 1). The notice alerted Cooper Tire investors of the action and that the deadline to seek appointment as lead plaintiff in this action was March 18, 2014. (D.I. 12 at 8; D.I. 13, Ex. C at 3). On March 18, 2014, OFI & Timber Hill filed their Motion for Appointment as Lead Plaintiffs and Approval of Lead Counsel. (D.I. 11). On the same day, Zhi Sun and Xiaoyan Jia (collectively the "Sun Family") filed their competing Motion for Appointment as Lead Plaintiffs and Approval of Lead Counsel. (D.I. 8).

For the reasons discussed below, the Court will appoint OFI & Timber Hill as Lead Plaintiffs for this securities action and approve their selection of Lead Counsel.

## BACKGROUND

### I. The Proposed Class Action

The complaint seeks monetary damages for securities fraud perpetrated by Cooper Tire. It proposes a class including all persons who purchased the publicly traded common stock of Cooper Tire between June 12, 2013 and November 8, 2013 and Cooper Tire stockholders of record as of the

close of business on August 30, 2013. (D.I. 1 at 1-2). The complaint alleges violations of §§ 10(b), 20(a), and 14(a) of the Securities Exchange Act of 1934 (the "Securities Exchange Act"). *Id.* at 41-45. According to the complaint, Cooper Tire is a Delaware corporation and a leading tire manufacturer. *Id.* at 2. In June 2013, Cooper Tire announced it had entered into an agreement to be acquired by Apollo Tyres Ltd., an India-based tire company, for $35 per share, a deal totaling $2.5 billion. *Id.* Cooper Tire executives presented the acquisition as a deal "in the best interest of the shareholders." *Id.* at 3. The complaint alleges that Cooper Tire executives knowingly failed to disclose that Cooper Tire's joint venture partner had also sought to acquire Cooper Tire, would oppose the merger with Apollo, and was capable of thwarting the merger. *Id.* at 3-4. The complaint further alleges that Cooper Tire made false and misleading representations material to the merger about its Chinese subsidiary's operations and Cooper Tire's control over the subsidiary's operations and financial reporting. (D.I. 1 at 6). The complaint alleges that, as a result of these misrepresentation and omissions, investors in Cooper Tire were misled about the true risk involved in the merger deal, which the shareholders had approved. *Id.* at 9. Following disclosure of its joint venture partner's opposition to the merger and the shutdown of its subsidiary's facilities in response to the announced merger, the market realized the merger would not close at the promised $35 per share and Cooper Tire's stock prices fell, resulting in losses for investors. *Id.*

## II. The Competing Movants

Plaintiffs OFI Risk Arbitrages and OFI Risk Arb Absolu (collectively the "OFI Funds") are *Fonds Commun de Placement* ("FCPs") organized under the laws of France. (D.I. 17, Ex. B at 3). According to the General Secretary of OFI Asset Management, under French law, the OFI Funds have no legal personality, and OFI Asset Management has the exclusive right to manage the OFI

2

Funds and engage in litigation in the OFI Funds' names. *Id.* OFI Asset Management is a

subsidiary of a French asset manager that "manages a variety of mutual funds" with assets totaling

$75 billion. *Id.* OFI claims that the OFI Funds purchased 51,000 shares during the class period

and suffered losses of $247,893.94. (D.I. 13, Ex. B at 2; D.I. 16 at 6). OFI's co-plaintiff, Timber

Hill, is a registered securities broker dealer in the United States and a subsidiary of Interactive

Broker Group, Inc., a global electronic broker dealer with $29 billion in assets. (D.I. 17, Ex. C at

2). Timber Hill trades a variety of securities-listed products on its proprietary account and creates

liquidity from "tight bid/offer spreads." *Id.* Timber Hill claims it suffered $265,296.74 in losses

as a result of its investment in Cooper Tire shares. (D.I. 16 at 6). Thus, OFI & Timber Hill claim

combined losses of $513,190.68. *Id.*

Sun and Jia are a married couple residing in San Jose, California. (D.I. 20, Ex. A at 3). The

Sun Family claims Sun purchased 5,100 Cooper Tire shares and suffered losses of $18,309. (D.I.

10, Ex. B at 2). The Sun Family also claims Jia purchased 14,000 shares and suffered losses of

$74,780. *Id.* Therefore, the Sun Family claims combined losses of $93,089. *Id.*

Both OFI & Timber and the Sun Family assert that they are the most adequate plaintiffs to

represent the class in this securities action and should be appointed lead plaintiffs. (D.I. 16 at 8;

D.I. 18 at 8).

## DISCUSSION

### I. Legal Standard

The selection of lead plaintiff and the approval of lead counsel are "committed to the court's

discretion." *Vandevelde v. China Natural Gas, Inc.*, 277 F.R.D. 126, 131 (D. Del. 2011) (internal

citation omitted). The PSLRA sets out a two-step process the court must follow in order to

3

determine the "most adequate plaintiff." *Id.* First, the court must identify the presumptive lead plaintiff. *Id.* Second, the court must determine whether the presumption has been rebutted. *Id.*

Under the PSLRA, the presumptive lead plaintiff is the person or group that (A) "filed the complaint or made a motion" to serve as lead plaintiff; (B) "has the largest financial interest in the relief sought;" and (C) "otherwise satisfies" Federal Rule of Civil Procedure 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc).

The presumption may be rebutted by opposing parties "only upon proof" that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class," or that the presumptive lead plaintiff is "subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb).

Once the most adequate plaintiff is determined by the court, the lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v).

## II. Presumptive Lead Plaintiffs

The Court finds that OFI & Timber Hill are the most adequate plaintiffs to represent the class and are entitled to the presumption. The threshold determination of the presumptive lead plaintiffs "should be a product of the court's independent judgment." *In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001). Arguments why particular movants are not entitled to the presumption "should be considered *only* in the context of assessing whether the presumption has been rebutted." *Id.* at 263-64 (emphasis in original). In their briefing and at oral argument, both the Sun Family and OFI & Timber Hill assert that they are entitled to the presumption. (D.I. 16 at 8; D.I. 18 at 8; D.I. 45 ("Transcript" and hereafter "Tr.") at 6-7). Because the Court finds that OFI

4

& Timber Hill have the presumption, the Sun Family's arguments why OFI & Timber Hill should

not be considered the presumptive lead plaintiffs will be addressed as rebuttals to the presumption.

## A. Motion for Appointment

First, the PSLRA requires that the presumptive lead plaintiff must have filed the complaint or

made a motion for appointment within sixty days of the publication of notice regarding the action.

15 U.S.C. § 78u-4(a)(3)(A)(i)(II), (B)(iii)(II)(aa). Both OFI & Timber Hill and the Sun Family

have complied with the procedural requirements of the PSLRA. (D.I. 11; D.I. 8).

## B. Largest Financial Interest

Second, to identify the movants with the largest financial interest, the court "should consider,

among other things: (1) the number of shares that the movant purchased during the putative class

period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the

approximate losses suffered by the plaintiffs." *Cendant*, 264 F.3d at 262.

The Court finds that OFI & Timber Hill have the largest losses.[1] OFI & Timber Hill claim

OFI's losses are $247,893.94 and Timber Hill's losses are $265,296.74, for combined losses of

$513,190.68.[2] (D.I. 16 at 6; Tr. at 15-16). The Sun Family asserts that, because Timber Hill

---

[1] The Court will only discuss the movants' losses calculated under the "Last-In-First-Out" ("LIFO") method. The method by which losses are calculated varies between courts. *Richman v. Goldman Sachs Grp.*, Inc., 274 F.R.D. 473, 476 (S.D.N.Y. 2011). Some courts have opted for the "First-In-First-Out" ("FIFO") method, while other courts have applied the LIFO method. *Id.* However, the Southern District of New York has noted that "the overwhelming trend … nationwide has been to use LIFO to calculate such losses." *Bo Young Cha v. Kinross Gold Corp.*, 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012). At oral argument, both OFI & Timber Hill and the Sun Family agreed that LIFO was an appropriate method for measuring losses at this stage in the litigation. (Tr. at 30-31). Therefore, for simplicity, the Court will only consider each movants' LIFO losses.

[2] At oral argument, OFI & Timber Hill claimed their combined losses were only $489,000. (Tr. at 15). However, the individual losses for OFI and Timber Hill given at oral argument actually add up to combined losses of $513,190.68. (Tr. at 15-16). OFI & Timber Hill first claimed combined losses of $489,000 in their initial brief. (D.I. 12 at 9). In their reply brief, OFI & Timber Hill claimed Timber Hill suffered additional losses inadvertently omitted from its initial loss chart and calculations, increasing their combined losses to $513,190.68. (D.I. 16 at 5 n.1, 6). Contrary to OFI & Timber Hill's assertion, they have not provided an updated loss chart for Timber Hill including these additional losses. (D.I. 16 at 5 n.1). Instead, OFI & Timber Hill provided another copy of the initial erroneous

5

bought and sold many of its shares through "in-and-out" trades prior to the October 4, 2013 disclosure, any losses incurred from sales prior to the disclosure must be excluded under the holding in *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005). (D.I. 18 at 16). In *Dura*, the Supreme Court held that when a purchaser of shares of stock at an inflated price sells the shares before the relevant misrepresentation is disclosed, any losses suffered are not caused by the misrepresentation. *Id.* at 342. According to the Sun Family, under *Dura*, Timber Hill's actual losses are no more than $22,715. (D.I. 18 at 19). OFI & Timber Hill assert that the exclusion of "*Dura* losses" is not required at this preliminary stage in the litigation, but concede that, if "in-and-out" trades prior to October 4, 2013 are excluded, Timber Hill's losses are "about $15,000" and OFI & Timber Hill's combined losses are $262,926. (D.I. 21 at 11-12; Tr. at 30). Regardless, OFI & Timber Hill assert that OFI purchased 51,000 shares during the class period and suffered losses of $247,893.94. (D.I. 13, Ex. B at 2; D.I. 16 at 6). Setting aside their standing argument discussed *infra*, the Sun Family does not dispute that calculation. (Tr. at 25). Further, there is no dispute that the Sun Family purchased 19,100 shares during the class period and suffered losses of $93,089. (D.I. 10, Ex. B at 2; D.I. 18 at 9). Therefore, the Court need not decide the appropriate calculation of Timber Hill's losses at this stage in the litigation as OFI's losses alone exceed the Sun Family's losses. Therefore, OFI & Timber Hill have the largest financial interest in this case.

## C. Rule 23 Requirements

Third, to determine whether the movants with the largest financial interest satisfy the requirements of Rule 23, a court's inquiry "need not be extensive." *Cendant*, 264 F.3d at 264.

---

loss chart. (D.I. 17, Ex. A). However, because OFI's individual losses have not changed and are not disputed, setting aside the Sun Family's standing challenge discussed *infra*, the Court need not decide at this preliminary stage which combined losses calculation is to be credited.

6

At this threshold stage, the court only needs to find that "movants have stated a *prima facie* case of typicality and adequacy." *Id.* Nevertheless, the court "should apply traditional Rule 23 principles." *Id.* at 264-65. For typicality, the court will consider whether the factual claims or legal theories advanced by the movants "are markedly different" from the claims of the class. *Id.* at 265 (internal citation omitted). For adequacy, the court will consider whether movants have "the ability and incentive" to represent the class "vigorously," whether there are any conflicts between the movants and the class, and whether the movants have "obtained adequate counsel," including whether selected counsel is competent and the retainer agreement is reasonable. *Id.* (internal citations omitted).

Regarding typicality, the circumstances and legal theories advanced by OFI & Timber Hill are not "markedly different" from the circumstances and theories of the proposed class. OFI & Timber Hill assert claims for violations §§ 10(b), 20(a), and 14(a) of the Securities Exchange Act. (D.I. 1 at 41-45). Like members of the proposed class, OFI & Timber Hill assert that they purchased shares of Cooper Tire stock on the open market, that they purchased the shares at an inflated price as result of Defendants concealment of material information regarding the merger, and that they suffered losses as a result. (D.I. 1 at 13-14, 41-45). Therefore, OFI & Timber Hill's claims are facially typical of the claims of the proposed class.

Regarding adequacy, OFI & Timber Hill have the incentives and resources to vigorously prosecute their claims on behalf of the class. Foremost, OFI & Timber Hill have substantial financial interests in the resolution of this litigation. (D.I. 12 at 12). OFI & Timber Hill have also expressed their interest in protecting the integrity of the marketplace and their concern about the alleged misrepresentations' effect on the market as motivation for bringing this suit. (D.I. 17,

7

Ex. B at 4, Ex. C at 4; Tr. at 62). Indeed, the fact that OFI & Timber Hill are the only investors who have filed an action against Cooper Tire evidences their interest in vigorously representing the class. There is no evidence that the interest of OFI & Timber Hill will conflict with the interests of the proposed class.

Further, as sophisticated institutional investors, both OFI and Timber Hill have the resources to adequately manage and direct this litigation, including dedicated staffs of in-house attorneys to manage outside counsel. (D.I. 17, Ex. B at 3-4, Ex. C at 3-4). OFI & Timber Hill's adequacy is further demonstrated by their selection of proposed Lead Counsel, who are experienced in complex securities litigation, and their negotiation of a reasonable fee agreement with proposed Lead Counsel. (D.I. 13, Ex. E & Ex. F; D.I. 42). Therefore, OFI & Timber Hill have sufficiently stated a *prima facie* case of typicality and adequacy under Rule 23.

Thus, because OFI & Timber Hill have the largest financial interest and otherwise satisfy the requirements of Rule 23, OFI & Timber Hill are the presumptive lead plaintiffs in this action. The Court will address the rebuttals offered by the Sun Family.

## III. Rebuttals

The Sun Family has failed to provide adequate proof to rebut the presumption in favor of OFI & Timber Hill as the most adequate plaintiffs. The Third Circuit has stressed that the PSRLA requires more than mere assertions in order to rebut the presumptive lead plaintiffs' status. *Cendant*, 264 F.3d at 270. Rather, the PSLRA requires "actual proof" that the presumptive lead plaintiffs are inadequate representatives of the class or subject to unique defenses. *Id.* at 269. The Sun Family has raised three rebuttals: (A) that OFI Asset Management lacks Article III standing to bring suit on behalf of the OFI Funds; (B) that OFI is susceptible to a unique *res*

8

*judicata* defense; and (C) that Timber Hill is both a "market maker" and a "day trader," which render it inadequate to serve as a lead plaintiff.

## A. OFI's Standing

The Sun Family asserts that OFI Asset Management lacks Article III standing to bring a claim for actual damages on behalf of the OFI Funds. (D.I. 18 at 10). To have standing, a plaintiff must "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (internal citation omitted).

The Sun family cites *Huff* from the Second Circuit, where that Court held that an investment advisor did not have standing to sue on behalf of its client funds for violations of securities laws, because the clients still held legal title to the shares. *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 111 (2d Cir. 2008). Only a transfer of ownership of the shares could confer standing to an investment advisor like the plaintiff in *Huff. Id.* at 109. The Second Circuit also recognized a "prudential exception" which permits "third-party standing where the plaintiff can demonstrate (1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests." *Id.* In *Huff*, the investment advisor did not meet the third-party exception because the relationship was not sufficiently close and the client funds could file suit on their own behalf. *Id.* at 110.

The Sun Family also relies on additional cases where courts have held that investment advisors or foreign asset managers did not have standing or were inadequate to be lead plaintiff. (D.I. 18 at 11; D.I. 23 at 7-8); *see Marcus v. J.C. Penney Co., Inc.*, 6:13-cv-736 (E.D. Tex. Feb. 28, 2014) (attached as Ex. B to D.I. 19) (holding that an Italian investment manager was not the most

9

adequate plaintiff because the investment manager did not produce affirmative evidence it had standing); *Steamfitters Local 449 Pension Fund v. Cent. European Distrib. Corp.*, 2012 WL 3638629, at *11 (D.N.J. Aug. 22, 2012) (holding that a Russian investment manager did not have standing to sue when its subsidiary funds were the entities that purchased shares and suffered losses); *In re Herley Indus. Inc. Sec. Litig.*, 2009 WL 3169888, at *6 (E.D. Pa. Sept. 30, 2009) (holding that an investment advisor had no standing and the third-party exception did not apply, because there was no evidence that the funds could not sue on their own behalf); *Baydale v. Am. Exp. Co.*, 2009 WL 2603140, at *3 (S.D.N.Y. Aug. 14, 2009) (deciding that the court would avoid any inquiry into the standing of a Swedish mutual fund manager and exercising its discretion to appoint another movant lead plaintiff).

The Sun Family argues that OFI Asset Management has no standing, because the OFI Asset Management did not purchase the shares and the OFI Funds did not assign OFI Asset Management title to the shares. (D.I. 18 at 10-12; D.I. 23 at 6-8). According to the Sun Family, as in the above-cited cases, this Court should find that OFI Asset Management does not have standing to bring a suit on behalf of the OFI Funds. The Court disagrees.

The Sun Family must produce more than speculation to rebut the presumption. The PSLRA is clear that the presumption is rebutted "only upon proof" that the presumptive lead plaintiff is inadequate and subject to unique defenses. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). Mere speculation about a unique defense does not meet this standard. *See In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005). The burden is on the Sun Family "to come forward with some proof" that the unique defenses raised are legitimate issues that will likely be litigated at trial. *Id.*

10

Thus, neither *Baydale* nor *J.C. Penney* is persuasive. Both cases rely on mere speculation, not actual proof provided by the opposing movant. In *Baydale,* the court opted not to engage in any inquiry regarding a foreign asset manager's standing when raised by the opposing movant. *Baydale*, 2009 WL 2603140, at \*3. Instead, the court avoided the issue by appointing another movant lead plaintiff. *Id.* at \*3-5. In *J.C. Penney*, the court did not require the opposing movant to provide evidence in support of its rebuttal. *J.C. Penney*, 6:13-cv-736 (D.I. 19, Ex. B at 11). Instead, the court shifted the burden to the presumptive lead plaintiff, an Italian asset manager, to affirmatively prove its standing to bring suit. *Id.* In the Court's opinion, neither *Baydale* nor *J.C. Penney* appropriately applied the burden of proof. At this stage in the litigation, it is the Sun Family's burden to show that standing will be a legitimate issue in order to rebut the presumption.

The other cases cited by the Sun Family also do not support a finding that OFI lacks standing or is subject to a unique defense. In both *Huff* and *Herley*, the courts found that there was no assignment of the shares' title to the investment advisors. *Huff*, 549 F.3d at 111; *Herley*, 2009 WL 3169888, at \*5. Here, OFI & Timber Hill do not claim that there was an assignment. (Tr. at 40). Therefore, the Sun Family's argument that, because there is no proof of assignment, OFI does not have standing under *Huff* is irrelevant. (D.I. 23 at 6).

Further, OFI Asset Management is not an investment advisor. Both *Huff* and *Herley* make clear that investment advisors do not fall within the third-party standing exception, because the relationship between an advisor and its clients is not sufficiently close, and there is no barrier to the clients bringing their own claims. *Huff*, 549 F.3d at 111; *Herley*, 2009 WL 3169888, at \*5. Though the FCPs are unique to French law, OFI & Timber Hill have described the OFI Funds as "trusts" and OFI Asset Management as an "asset manager that manages a variety of mutual funds."

11

(D.I. 1 at 13; D.I. 17, Ex. B at 3). The Sun Family has provided no evidence that OFI Asset Management is more appropriately characterized as the type of "advisor" prohibited from bringing suit under *Huff* or any other evidence that OFI's standing will be a legitimate issue.

To the contrary, though OFI & Timber Hill have no burden to provide evidence at the rebuttal stage, they have provided persuasive case law and declarations demonstrating OFI Asset Management's standing to file suit on behalf of the OFI Funds. OFI & Timber Hill cite *Vivendi*, in which the court found, as matter of law, that a French asset manager had standing to bring a suit on behalf of its FCPs. (D.I. 16 at 15; D.I. 21 at 9); *In re Vivendi Universal, S.A. Sec. Litig.*, 605 F. Supp. 2d 570, 580 (S.D.N.Y. 2009). In deciding a defendant's motion for summary judgment and based on expert opinions from both parties, the court noted that, "Legal experts from both sides of the debate agree that FCPs do not have legal personality and thus cannot act on their own. ... Designated management companies act for the FCPs, with each acting in its own name ... indicating that it is acting on behalf of the FCP." *Id.* at 579 (internal quotations omitted). Further, while analogizing the FCPs to mutual funds, the court also noted that, "FCPs retain ownership of the funds['] assets and operate similar to trusts." *Id.* at 580. The Second Circuit in *Huff* specifically noted that courts have historically permitted "trustees to bring suits to benefit their trusts" under the third-party exception. *Huff*, 549 F.3d at 110-11 (internal citation omitted). Because *Vivendi* was decided at the summary judgment stage, and the court found as a matter of law that the exact same type of French asset manager as in this case had standing to bring suit on behalf of the FCPs, the Court finds its determination to be persuasive.

OFI & Timber Hill also provided declarations from the general secretary of OFI Asset Management, Jean-Luc Malafosse, and a purported expert in French law, Dr. Andrea Pinna. (D.I.

12

17, Ex. B; D.I. 22, Ex. A). Echoing the opinions of the experts in *Vivendi*, both Malafosse and Dr. Pinna declare that the OFI Funds, as FCPs, have "no legal personality and cannot act on their own," and that OFI Asset Management has an "exclusive right" and "legal mandate" to engage in litigation on behalf of the OFI Funds. (D.I. 17, Ex. B at 3; D.I. 22, Ex. A at 3-4).

Furthermore, this District has previously appointed a foreign asset manager as lead plaintiff under the PSLRA. *Molson Coors*, 233 F.R.D. at 149 n.1, 151 (appointing a German "investment advisor/manager" as lead plaintiff after it provided affidavits demonstrating that it had authority to recover damages on behalf of the investors in its funds). Other district courts have also held that foreign asset managers of funds had standing to bring suit. *See In re Winstar Commc'ns Sec. Litig.*, 290 F.R.D. 437, 444 (S.D.N.Y. 2013) (holding that an Italian asset manager had standing to sue on behalf of its funds under the *Huff* third-party exception, because its structure was similar to U.S. mutual funds); *Hufnagle v. Rino Int'l Corp.*, 2011 WL 710704, at *5 (C.D. Cal. Feb. 14, 2011) (holding that a Luxembourg asset manager was not investment advisor, but comparable to a mutual fund, and had standing to bring suit).

Therefore, based on the determination in *Vivendi*, the declarations of Malafosse and Dr. Pinna, the fact that others courts have held that foreign asset managers had standing, and that this District has previously appointed a foreign asset manager as lead plaintiff, the Court is persuaded that, regardless of whether the OFI Funds are characterized as "mutual funds" or "trusts," OFI Asset Management has standing to file suit on behalf of the OFI Funds.

## *B. OFI's Susceptibility to a Res Judicata Defense*

Next, the Sun Family argues that, because OFI Asset Management is a French entity, OFI is subject to a unique *res judicata* defense. (D.I. 18 at 12). The doctrine of *res judicata* is an

13

affirmative defense, which precludes a plaintiff from bringing a claim when there has already been a final judgment on the merits in a suit involving the same parties based on the same cause of action. FED. R. CIV. P. 8(c); *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984) (internal citation omitted). According to the Sun Family, French courts may not give an opt-out class action judgment from this Court *res judicata* effect. (D.I. 18 at 12). Thus, Defendants may argue that a class action is not the superior method to adjudicate the class's claims because even if Defendants prevail, OFI could file an identical claim in France. *Id.* The Sun Family also argues OFI would be unable to enforce a favorable judgment against Defendants in France. *Id.*

In support of their argument, the Sun Family cites an *amicus curiae* brief submitted to the Supreme Court by the Republic of France, where France stated that French courts would not recognize a judgment in an opt-out class action from the United States, because the opt-out method of binding class members "violates French constitutional principles and public policy." (D.I. 18 at 13); Brief for The Republic of France as *Amicus Curiae* in Support of Respondents at 26, *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010) (attached as Ex. A to D.I. 19 at 38) (hereafter cited to as "D.I. 19, Ex A"). The Sun Family also cites *Alstom* and *Anwar*, where the district courts did not certify class actions that contained French investors as absent class members, because France would not recognize the judgment from an opt-out class action. (D.I. 18 at 14-15); *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 287 (S.D.N.Y. 2008); *Anwar v. Farfield Greenwich*, 289 F.R.D. 105, 118 (S.D.N.Y. 2013), *vacated and remanded on other grounds by St. Stephen's Sch. v. PriceWaterHouseCoopers Accountants N.V.*, 2014 WL 2766174, at \*2 (2d Cir. June 19, 2014).

14

The Sun Family cites additional cases where courts have eliminated foreign parties from class actions. (D.I. 18 at 12-13); *Birsch v. Drexel Firestone, Inc.*, 519 F.2d 974, 996 (2d. Cir. 1975) (eliminating all foreign investors from the class because of concerns that foreign courts would not recognize the judgment), *abrogated on other grounds by Morrison*, 561 U.S. at 261; *In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 291, 301 (D. Del. 2003) (excluding foreign investors from the class due to both management concerns and concerns that foreign courts would not recognize the judgment). The Sun Family also cites several cases in which courts have denied lead plaintiff status to foreign investors because of *res judicata* concerns. (D.I. 18 at 12-13); *J.C. Penney*, 6:13-cv-736 (D.I. 19, Ex. B at 11-12) (holding that the risk that Italian courts will not enforce a judgment was sufficient to deny Italian investment manager lead plaintiff status); *Buegetten v. Harless*, 263 F.R.D. 378, 382 (N.D. Tex. 2009) (holding Swiss entity was inadequate to be lead plaintiff because of *res judicata* concerns); *Borochoff v. Glaxosmithkline PLC*, 246 F.R.D. 201, 205 (S.D.N.Y. 2007) (holding that the risk that foreign investors may be excluded from the class because Germany may not recognize a judgment was sufficient to deny German investors lead plaintiff status); *In re Royal Ahold N.V. Securities and ERISA Litig.*, 219 F.R.D. 343, 353 (D. Md. 2003) (holding that the possibility that foreign courts would not recognize judgment was enough to deny a group of foreign parties lead plaintiff status).

The Sun Family's argument is unpersuasive. France's *amicus curiae* brief did not address whether France would enforce a judgment from a United Sates court when a French plaintiff voluntarily initiated a claim. *Morrison* addressed whether United States securities law provided "a cause of action to foreign plaintiffs suing foreign and American defendants for misconduct in connection with securities traded on foreign exchanges." *Morrison v. Nat'l Australia Bank Ltd.*,

15

561 U.S. 247, 250-51 (2010). France's *amicus curiae* brief opposed the extra-territorial application of United States securities laws. (D.I. 19, Ex. A at 13-14). One reason for France's opposition was that "opt-out" class actions allowed named plaintiffs to sue on behalf of absent class members without their consent based on the principle of constructive notice. *Id.* at 36. This feature violates the French constitutional principle that "the choice to initiate and terminate a legal action is an important individual right." *Id.* at 39. Thus, French courts would not enforce opt-out judgments from United States courts binding its citizens "to a legal decision in which [they] did not voluntarily participate." *Id.* at 40.

The difference in the present case is that OFI are not absent class members who would be bound by the judgment even if they did not participate in the class action. OFI, along with Timber Hill, voluntarily chose to file their complaint. (D.I. 1). Thus, France's concerns about the binding effect of an opt-out class action on French citizens who have not given informed consent to the litigation are not at issue with regard to OFI. Therefore, the *amicus curiae* brief does not support the Sun Family's argument that OFI are subject to a *res judicata* defense. If anything, the *amicus curiae* brief supports the counter-argument that French courts would enforce a judgment against OFI. As the *amicus curiae* brief states, "the choice to initiate and terminate a legal action is an important individual right" under French constitutional law. (D.I. 19, Ex. A at 39). OFI have clearly exercised that right by initiating this action.

Similarly, *Alstom* and *Anwar* do not support the Sun Family's arguments against OFI. Both courts concluded only that a class action was not the superior method of adjudication for French investors when it was unlikely French courts would recognize a judgment against absent French class members. *Alstom*, 253 F.R.D. at 287; *Anwar*, 289 F.R.D. at 118. Neither court addressed

16

whether French courts would recognize a judgment when a French plaintiff, like OFI, voluntarily initiated the suit.

Further, *Alstom* and *Anwar*, as well as *Bersch* and *DaimlerChrysler*, are not relevant at this stage in the proceeding. The question at this stage, under the PSLRA, is whether OFI & Timber Hill will fairly represent the class or are subject to unique defenses. The cases of *Alstom*, *Anwar*, *Bersch*, and *DaimlerChrysler* address whether to certify a class under Rule 23 containing foreign investors when foreign courts are unlikely to enforce a judgment against absent class members from their respective countries. *Alstom*, 253 F.R.D. at 287; *Anwar*, 289 F.R.D. at 118; *DiamlerChrysler*, 216 F.R.D. at 301; *Birsch*, 519 F.2d at 996. The answer to that question does not address OFI's adequacy as lead plaintiff, nor is it a question unique to OFI. As discussed in *Molson Coors*, "[t]he preclusive effect [in another country] of a judgment here is not a question unique to [presumptive lead plaintiff] ... To the extent there is any such *res judicata* question, it would apply to any and all members of the putative class." *Molson Coors*, 233 F.R.D. at 153 (italics added). Indeed, OFI & Timber Hill have provided a report listing the institutional investors who held shares in Cooper Tire, many of which are foreign entities. (D.I. 22, Ex. B). Thus, whether foreign institutional investors will be precluded from the class because of *res judicata* concerns in their home country is an issue not unique to OFI, but could arise no matter who the lead plaintiff is.

The Court cannot agree with the Sun Family's assertion that the "mere risk" that *res judicata* issues may arise in the litigation is enough to rebut the presumption. (Tr. at 56). The PSLRA and *Molson Coors* require the Sun Family provide actual proof. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II); *Molson Coors*, 233 F.R.D. at 151. The Sun Family has provided no proof that French courts

17

would not give a judgment against OFI *res judicata* effect when OFI is not an absent class member and voluntarily initiated this suit. Furthermore, the Sun Family has not provided proof that French courts would have jurisdiction to hear an identical claim brought by OFI for the alleged securities fraud by a United States defendant, involving shares bought on a United States stock exchange and conduct that occurred in the United States. *See Marsden v. Select Med. Corp.*, 246 F.R.D. 480, 486 (E.D. Pa. 2007) (holding that defendants failed to prove Austrian courts would have jurisdiction over securities fraud that occurred in the United States in order to support its argument that the lead plaintiff was inadequate because Austrian courts would not give a judgment *res judicata* effect).

Again, though OFI & Timber Hill have no burden to produce evidence at this stage, they have provided persuasive case law. OFI & Timber Hill cite *Hufnagle*, in which the court noted that, "'While in some contexts courts have identified *res judicata* concerns in not appointing foreign investors as lead plaintiffs, this has been explicitly rejected when the foreign lead plaintiff movants are suing as a result of purchases made on a domestic securities exchange.'" *Hufnagle*, 2011 WL 710704, at *7 (quoting *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 133 (S.D.N.Y. 2011)). OFI & Timber Hill also cite *Takeda*, where, after surveying cases from several districts, the court determined that, "Concerns respecting the *res judicata* impact of any judgment in favor of defendants, which have been the focus of decisional discussion of the difficulties inherent in certifying transnational classes, are not an issue with respect to the selection of Lead Plaintiffs, since those persons will clearly be bound by the judgment of the court." *Takeda v. Turbodyne Technologies, Inc.*, 67 F. Supp. 2d 1129, 1139 (C.D. Cal. 1999) (italics added). The Court finds these cases persuasive. Like those cases, whether French courts would recognize a judgment

18

against OFI from this Court is not at issue in this case, because this case involves securities purchased on a domestic stock exchange and OFI has submitted to this Court's jurisdiction by filing the complaint.

OFI & Timber Hill have provided the declaration of Dr. Pinna, who opined that because OFI is not an absent class member, rather a named party to the litigation, the issue of whether the opt-out method is compatible with French public policy and constitutional principles is not relevant. (D.I. 22, Ex. A at 6). Dr. Pinna further stated that, because OFI is a participant in the litigation, French courts would give a judgment against OFI and its investors *res judicata* effect. *Id.* Therefore, this Court does not find that OFI is subject to a unique *res judicata* defense.

## C. *Timber Hill's Adequacy to Serve as a Lead Plaintiff*

Lastly, the Sun Family asserts that Timber Hill will not fairly and adequately represent the class, because it is a "market maker" and a "day trader," which make Timber Hill atypical of the class. (D.I. 18 at 21, 23).

A "market maker" is a securities dealer who regularly and continuously buys and sells securities from their own account to other dealers in an inter-dealer market based on published bids and quotations and profits from the difference between the bid and the asked price. 15 U.S.C. § 78c(a)(38); *McNichols v. Loeb Rhoades & Co., Inc.*, 97 F.R.D. 331, 344 (N.D. Ill. 1982). The Sun Family argues that, because Timber Hill is a market maker, it is subject to "a number of unusual requirements" that render it atypical of the class. (D.I. 18 at 21). The Sun Family also claims that Timber Hill's use of proprietary technology to gain a competitive advantage over the rest of the market also makes Timber Hill atypical of the class. *Id.*

19

In none of its briefing or at oral argument does the Sun Family articulate what about Timber Hill's "unusual and unique" requirements render it atypical of the class for asserting its securities fraud claims. Nor does the Sun Family articulate why the use of a proprietary "computerized market making system" makes Timber Hill atypical. When asked at oral argument whether their argument was that market makers do not rely on the market price, which subjects Timber Hill to a unique defense regarding the reliance element of their claims, the Sun Family's counsel did not answer the question. Tr. at 47-48. Rather, counsel stated that a market maker could not be lead plaintiff because "they have additional information *perhaps* ahead of other traders and that makes them atypical." Tr. at 48 (emphasis added). The Sun Family's counsel further emphasized that the cases cited in their brief hold that market makers are atypical "[b]ecause they have additional information, et cetera." *Id.*

Contrary to the Sun Family's assertion, the cases cited in their briefs do not hold that market makers were atypical because of additional information or unique reporting requirements. Rather, the cases cited hold that the market makers in those cases were atypical of the class because they were subject to unique defenses regarding their reliance on the alleged fraud. *Tice v. Novastar Fin., Inc.*, 2004 WL 1895180, at *5 (W.D. Mo. Aug. 23, 2004) (holding a market maker was atypical of a class because they were potentially subject to unique defenses regarding their reliance); *Seamans v. Aid Auto Stores, Inc.*, 2000 WL 33769023, at *4 (E.D.N.Y. Feb. 15, 2000) (holding that a market maker could not be lead plaintiff because reliance and materiality are unique for a market maker); *McNichols*, 97 F.R.D. at 344 (holding that a market maker is atypical of the class because "issues of both reliance and materiality would be different for a market maker").

20

However, other cases have held that market makers are not atypical of the class in securities

fraud actions. In holding that a market maker was typical of the proposed class, the court in

*Oxford Health Plans* noted that:

> [W]here the public market of a quoted security is polluted by false information, or
> where price, supply and demand are distorted as a result of misleading omissions, all
> types of investors are injured. ... Included among those injured are so called market
> makers. ... [I]t is hard to imagine that there ever is a buyer or seller who does not rely
> on market integrity.

*In re Oxford Health Plans, Inc. Sec. Litig.*, 199 F.R.D. 119, 124 (S.D.N.Y. 2001) (internal citations

omitted). Furthermore, "[c]oncerns involving market makers and unique defenses are even less

relevant" when a supposed market maker "trades solely for its own account" and does not

engaging in actual market making activity regarding the securities at issue in the case. *In re NYSE*

*Specialists Sec. Litig.*, 260 F.R.D. 55, 72 (S.D.N.Y. 2009).

Here, the Sun Family has provided copies of an SEC filing from Timber Hill's parent

company, Interactive Broker, which evidence that it engages in market making activity through

Timber Hill. (D.I. 19, Ex. E at 3). The SEC filing states that, in its market making activity,

Interactive Broker generally does not "take portfolio positions in either the broad market or the

financial instrument of specific issuers in anticipation that prices will rise or fall," and that it "may

take a position counter to the market" in order to fulfill its obligations. *Id.* at 3, 5. The SEC

filing further states that Interactive Broker's market making activities are conducted through a

"proprietary risk management system" and that its mathematical models "assimilate market data"

to control "exposure to price and volatility." *Id.* at 3-4. The SEC filing states that Timber Hill

derives its revenue from the difference between the price paid to acquire shares and the price paid

when the shares are sold. *Id.* at 6.

The SEC filings corroborate the Sun Family's assertion that Timber Hill is a market maker, its use of proprietary technology, and its reporting obligations, but the Sun Family has provided no proof that this renders Timber Hill inadequate to be a lead plaintiff. Neither the SEC filing nor the cases cited evidence why the reporting requirements or the use of proprietary technology makes Timber Hill inadequate or subject to unique defenses. Instead, cases focus on the reliance issues unique to market makers, an argument the Sun Family has not made.

Even if the Sun Family did argue that Timber Hill's trading volume and frequency subjected it to unique defenses regarding reliance, there is insufficient evidence to persuade this Court that reliance would be a legitimate issue at trial. Though the SEC filing does state that Interactive Broker does not take a position on whether prices with rise and fall and may take a position contrary to the market, it also explicitly states that Interactive Broker's technology "assimilates market data," which presumably includes the market price for shares, and that Interactive Broker's revenue is derived from the price paid for the share when sold over the price paid when the share was acquired. Therefore, as the court observed in *Oxford Health Plans*, it is difficult for me to see how Timber Hill's market making activity was not affected by the alleged misrepresentations when its models assimilate market data and its revenue is derived from the buying and selling of stock. From the evidence provided, it appears that Timber Hill's losses would be affected by the alleged fraud just as the other investors' losses would be.

Further, there is no evidence Timber Hill was actually engaged in money making activity when it traded in Cooper Tire shares. In its declarations and at oral argument, Timber & OFI asserted that this case does not involve market making activity and that Timber Hill traded in Cooper Tire shares "for its own account." (D.I. 17, Ex. C at 2; Tr. at 48-49). Therefore, as in

22

*NYSE Specialists*, concerns about Timber Hill's market making activity may be irrelevant because Timber Hill was not actually engaged in that activity with regard to Cooper Tire.

The Court finds the Sun Family's argument that Timber Hill is inadequate to be a lead plaintiff because it is a "day trader" to be unconvincing. The Sun Family does not provide a specific definition of what constitutes a "day trader" or how frequently an investor must trade in a stock to be a "day trader." The Sun Family merely claims that Timber Hill bought and sold Cooper Tire shares "on average, almost [thirty] times per trading day," and that the volume and frequency of Timber Hill's trading activity made it atypical of the class. (D.I. 18 at 23-24).

The Sun family cites *Applestein*, *Safeguard Scientifics*, and similar cases where courts held that high-frequency "day traders" were inadequate to be lead plaintiff because a day trader "typically focuses on technical price movements rather than price, and therefore are subject to a defense [that] they would have purchased the stock at issue regardless of the misstatement [or] omission." (D.I. 18 at 23-24); *Applestein v. Medivation Inc.*, 2010 WL 3749406, at *3 (N.D. Cal. Sept. 20, 2010); *In re Safeguard Scientifics*, 216 F.R.D. 577, 583 (E.D. Pa. 2003).

However, other districts have held that day traders "have the same incentives to prove defendants' liability as all other class members, and their presence in a securities class does not create intra-class conflicts." *Prefontaine v. Research in Motion Ltd.*, 2012 WL 104770, at *4 (S.D.N.Y. Jan. 5, 2012). Absent actual evidence that plaintiff did not rely on market price, the characterization of the presumptive lead plaintiff as a "day trader" does not prove that the presumptive lead plaintiff "is subject to a unique defense to rebut the presumption." *Prefontaine*, 2012 WL 104770, at *4; *see also Schueneman v. Arena Pharm., Inc.*, 2011 WL 3475380, at *7 (S.D. Cal. Aug. 8, 2011) (holding that "plaintiff's status as a purported day trader" was not enough

23

to rebut the presumption, "[a]bsent evidence that [the plaintiff] did not rely on the market price of the shares"). In fact, in *Safeguard Scientifics*, cited by the Sun Family, the court specifically noted that the day trader bought shares after public disclosure of the alleged fraud, which raised legitimate issues regarding whether plaintiff actually relied on the market price. *Safeguard Scientifics*, 216 F.R.D. at 582.

In light of PSLRA and *Molson,* the Court agrees that the fact that an investor may trade at higher volume or more frequently and could be characterized as a "day trader" is not enough to rebut the presumption. The opposing movant must provide some additional evidence that a presumptive lead plaintiff did not rely on market price of the shares. Here, the Sun Family has not produced any evidence that Timber Hill did not rely on market price when it traded in Cooper Tire shares. Thus, the Court finds that the Sun Family has not demonstrated that Timber Hill is inadequate to be lead plaintiff or subject to unique defenses.

For the foregoing reasons, the Court finds that the Sun Family has not provided sufficient evidence to rebut the presumption that OFI & Timber Hill are the most adequate plaintiffs. Therefore, OFI & Timber Hill will be appointed Lead Plaintiffs for this securities action.

## IV. Approval of Lead Counsel

Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). The PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." *Cendant Corp. Litig.*, 264 F.3d at 276. The court's inquiry is limited to "whether the lead plaintiff's selection and agreement with counsel are reasonable on their own terms." *Id.* The court should consider: (1) "the legal experience and

24

sophistication of the lead plaintiffs;" (2) how lead plaintiffs chose which law firms to consider; (3) the lead plaintiffs' process for selecting lead counsel; (4) "the qualifications and experience" of selected counsel; and (5) any evidence regarding whether the retainer agreement was the product of serious negotiations between the lead plaintiff and the prospective lead counsel.  *Id.*

Here, OFI & Timber Hill are sophisticated institutional investors with in-house counsel overseeing this action.  (D.I. 17, Ex. B at 3-4 & Ex. C at 3-4).  Further, selected Lead Counsel, the firms of Entwhistle & Cappucci and Bernstein Litowitz, have represented both OFI and Timber Hill in prior securities litigation.  (D.I. 42 at 4).  There is no evidence that negotiation was not conducted in an arms-length transaction or that the retainer agreement is unreasonable. Therefore, the Court will approve OFI & Timber Hill's selection of lead counsel.

## CONCLUSION

For the reasons discussed above, the Court will grant OFI & Timber Hill's Motion for Appointment as Lead Plaintiff and Approval of their Selection of Lead Counsel.  (D.I. 11).  The Court will deny the Sun Family's Motion for Appointment as Lead Plaintiff and Approval of their Selection of Lead Counsel.  (D.I. 8).  A separate order will be entered.

25